**HILL RIVKINS LLP**
45 Broadway. Suite 1500
New York, New York 10006
(212) 669-0600
*Attorneys for Plaintiffs*
*International Auto Logistics, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AXA CORPORATE SOLUTIONS                           Docket No.
DEUTSCHLAND a/s/o BMW AG,                         1:16-cv-4063 (JMF)

        Plaintiff,                                     **SECOND AMENDED**
  -v-                                                  **COMPLAINT**

M/V COURAGE, her engines, tackle, boilers, etc.,
*in rem;* FIDELIO LIMITED PARTNERSHIP INC.;
AMERICAN ROLL-ON ROLL-OFF CARRIER
LLC; TOTE SERVICE INC.; GOVLOG NV;
UNITED STATES OF AMERICA and FORD
MOTOR COMPANY,

        Defendants.
-----------------------------------------------------------------X   16-CV-4125 (JMF)

HDI GLOBAL SE a/s/o Daimler AG,

        Plaintiff,
  -v-

M/V COURAGE, et al.,

        Defendants.
-----------------------------------------------------------------X
                                                         16-CV-4149 (JMF)
INTERNATIONAL AUTO LOGISTICS, INC.,

        Plaintiff,
  -v-

M/V COURAGE, et al.,

        Defendants.
-----------------------------------------------------------------X

1

Plaintiff, INTERNATIONAL AUTO LOGISTICS, INC. (hereinafter "IAL" or "Plaintiff"), by and through its attorneys, Hill Rivkins LLP, as and for its Second Amended Complaint, alleges upon information and belief as follows:

## JURISDICTION

**1.** This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333, 28 U.S.C. §1367 and Paragraph 5 of the American Roll-On Roll-Off Carrier LLC bills of lading and Paragraph 13 of the Wallenius Wilhelmsen Logistics bill of lading, which provide for jurisdiction in this District for claims involving cargo shipments that travel to or from a port in the United States. In addition, the defendants have systematic and continuous business contacts and presence in the United States and this District.

## PARTIES

2. At all material times, International Auto Logistics, Inc. ("IAL") was and is a U.S. corporation with its principal place of business located at 110 Office Park Lane, Suite 200, St. Simon's Island, Georgia 31522 and was the shipper of various personally owned vehicles ("POVs") laden aboard the captioned vessel, as more specifically described below, which suffered severe physical damage while on board the vessel and which may be called upon by vessel interests to contribute in salvage and General Average expenses which may be assessed.

3. At all material times, defendant, Fidelio Limited Partnership. (hereinafter "Vessel Defendant" or "Fidelio"), was and is a limited partnership or other business entity duly existing at law, with an office and place of business located at 188 Broadway, Suite 1, Woodcliff Lake, New Jersey 07677, was and is still doing business within the jurisdiction of this Honorable Court, and owned, operated, managed and/or otherwise controlled the M/V COURAGE.

4. At all material times, defendant, American Roll-On Roll-Off Carrier LLC (hereinafter "Vessel Defendant" or "ARC") was and is a limited liability company with an office and place of business located at 1 Maynard Drive, 3rd Floor, Park Ridge, New Jersey 07656, was and is still doing business within the jurisdiction of this Honorable Court as a common carrier of goods for hire, and owned, operated, managed and/or otherwise controlled the M/V COURAGE.

5. At all material times, defendant, Wallenius Wilhelmsen Logistics (hereinafter "Vessel Defendant" or "WWL") was and is a corporation with an office and place of business located at 188 Broadway, Suite 1, Woodcliff Lake, New Jersey 07677, was and is still doing business within the jurisdiction of this Honorable Court as a common carrier of goods for hire, and owned, operated, managed and/or otherwise controlled the M/V COURAGE.

6. At all material times, defendant, Tote Services, Inc. (hereinafter "Vessel Defendant" or "Tote") was and is a corporation with an office and place of business located at 10550 Deerwood Park Blvd., Suite 602, Jacksonville, FL 32225, was and is still doing business within the jurisdiction of this Honorable Court as a common carrier of goods for hire, and owned, operated, managed and/or otherwise controlled the M/V COURAGE.

7. At all material times, defendant, GovLog NV (hereinafter "Cargo Shipper Defendant" or "GovLog") was and is a foreign corporation with an office and place of business located at Belcrowniaan 23, Antwerp 2100, Belgium and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a shipper of vehicles to the United States.

8. At all material times, defendant, United States of America (hereinafter "Cargo Shipper Defendant" or "USA") is a sovereign entity and, at all material times, was the employer of Mary Smith, a United States citizen. Mary Smith was the owner of the Ford Escape discussed

3

in further detail below. The USA has an address c/o the United States Attorney's Office for the Southern District of New York, One St. Andrews Plaza, New York, New York 10007.

9. At all material times, defendant, Ford Motor Company (hereinafter "Defendant" or "Ford") was and is a corporation with an office and place of business located at One American Road, Dearborn, Michigan and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court..

10. Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and Plaintiff is entitled to maintain this action.

## RELEVANT FACTS

11. During May, 2015, consignments consisting of a total of 461 POVs, then being in good order and condition, were delivered by and/or on behalf of IAL to the M/V COURAGE and to the Vessel Defendants and/or their agents at the various ports consisting of Bremerhaven, Charleston, Galveston, and/or Brunswick (Georgia) for international transportation by sea to various ports consisting of Southampton (England) for all POVs loaded United States, and consisting of Baltimore, Galveston, Brunswick (Georgia) and/or Charleston for POVs loaded in Bremerhaven, all in consideration of an agreed upon freight, pursuant to various ARC bills of lading numbers each dated May 31, 2015.

12. Thereafter, the last consignment of vehicles was loaded aboard the M/V COURAGE, and the Vessel departed Bremerhaven in the early morning of June 2, 2015 destined for the above listed ports.

13. On June 2, 2015 a fire broke out on board the M/V COURAGE in the vicinity of the car loading ramp of decks 08-10.

14. The fire was extinguished by the crew of the M/V COURAGE utilizing the firefighting equipment on board the vessel.

15. After the fire was extinguished the M/V COURAGE berthed in Southampton, England for investigation purposes. The vessel then returned to Bremerhaven, Germany.

16. Plaintiff's POVs were not in the same good order and condition when discharged as they had been when first delivered to the M/V COURAGE and the Vessel Defendants. To the contrary, at least 221 POVs were physically damaged and determined to be constructive total losses, as set forth in Schedule A, appended hereto.

17. The value of the 221 POVs, plus ongoing storage, debris removal and survey charges total approximately $5,000,000.

18. Upon information and belief, the origin of the fire has been attributed to a 2002 Ford Escape, VIN number 1FMYU01BX2KD64419 ("the Subject Ford Vehicle") that was carried on board the vessel pursuant to Bill of Lading no. AROFBEANR005009 issued by Defendant American Roll-On Roll-Off Carrier, LLC to Defendant GovLog.

19. Upon information and belief, the 2002 model Ford Escape has been the subject of 10 separate recall notices. Two of the recall notices involved defects that had the potential to start a fire.

20. Upon information and belief, the Subject Ford Vehicle had a design defect and that this design defect is believed to have been the origin of the fire.

21. By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST**
**VESSEL DEFENDANTS- BREACH OF CONTRACT**

22.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 21, inclusive, as if herein set forth at length.

23.     Pursuant to the various contracts of carriage entered into between the parties, Vessel Defendants owed a contractual and statutory duty to the Plaintiff, to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time the said Vessel Defendants first accepted custody and control of the goods.

24.     The Vessel Defendants breached their contractual and statutory duties by failing to properly and safely transport, care for, bail, protect, and deliver the Plaintiff's cargo in the same good order and condition as at the point(s) in time the said Vessel Defendants first accepted custody and control of the goods for transport.

25.     As a direct and proximate result of said breach of contract by the Vessel Defendants, the Plaintiff has suffered damages in the amount presently estimated to be no less than $4,750,000.

26.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with more specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST VESSEL DEFENDANTS- BREACH OF BAILMENT

27.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 26, inclusive, as if herein set forth at length.

28.     Pursuant to their obligations as bailees for hire of the Plaintiff's cargo, the Vessel Defendants owed contractual and statutory duties to Plaintiff to carry, bail, keep and care for,

protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Vessel Defendants first accepted custody and control of the goods.

29.     The Vessel Defendants breached their duties as bailees for hire by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Vessel Defendants first accepted custody and control of the goods.

30.     As a direct and proximate result of the breach of bailment by the Vessel Defendants, the Plaintiff has suffered damages in the approximate amount of $4,750,000.

31.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST
### VESSEL DEFENDANTS – NEGLIGENCE

32.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 31, inclusive, as if herein set forth at length.

33.     The Vessel Defendants owed a duty to the Plaintiff to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Vessel Defendants first accepted custody and control of the goods.

34.     The Vessel Defendants breached and were negligent in their duty to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Vessel Defendants first accepted custody and control of the goods.

35.     As a direct and proximate result of the negligence by the Vessel Defendants, the Plaintiff has suffered damages in the approximate amount of $4,750,000.

36. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST VESSEL DEFENDANTS - M/V COURAGE WAS UNSEAWORTHY

37. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 36, inclusive, as if herein set forth at length.

38. Prior to, and at all times relevant hereto, the Vessel Defendants failed to exercise due diligence to make the M/V COURAGE seaworthy. The M/V COURAGE was at all relevant times not fit to undertake the service in which she was engaged. The losses suffered by or in connection with Plaintiff's cargo were caused in whole or in part by the Vessel Defendants' failure to exercise due diligence to make the M/V COURAGE seaworthy at the commencement of the voyage.

39. The losses suffered by or in connection with Plaintiff's cargo, as well as the fire which occurred on board the vessel on June 2, 2015 off Southampton, England were caused in whole or in part by the fault, design or neglect, or want of care of the Vessel Defendants and/or the M/V COURAGE, and/or those in charge of the M/V COURAGE, and/or persons for whom Vessel Defendants are responsible.

40. The losses suffered by or in connection with Plaintiff's cargo, as well as the subject casualty, resulted from causes within the privity and knowledge of the Vessel Defendants, and/or their officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge or imputable to the Vessel Defendants.

41. As a direct and proximate result of the aforesaid unseaworthiness resulting from the Vessel Defendants actions, or failure to act, the Plaintiff has suffered damages in the approximate amount of $4,750,000.

42. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST GOVLOG - STRICT LIABILITY

43. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 42, inclusive, as if herein set forth at length.

44. Defendant GovLog as a shipper of the Subject Ford Vehicle, had a statutory duty to other shippers of cargo laden on board the M/V COURAGE to ensure that the 2002 Ford Escape was in good order and condition and otherwise in all respects safe for the transit from Germany to the United States, and/or to warn such other cargo shippers and/or vessel carriers interests of any defects of which GovLog knew or reasonably should have known.

45. Defendant GovLog, as a cargo shipper, is strictly liable for any and all damages its cargo causes to other cargo properly laden on board the M/V COURAGE in that the 2002 Ford Escape is and was a "dangerous cargo" as that term is used in Section 4(6) of the Carriage of Goods By Sea Act.

46. Upon information and belief, the Subject Ford Vehicle was in a defective condition at the time it was stowed on board the M/V COURAGE on or about May 29, 2015 in Antwerp, Belgium, and such defective condition rendered the Subject Ford Vehicle to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable third-party by-standers.

47. Defendant GovLog unreasonably failed to warn any interested parties and/or any parties, such as IAL, who were potentially subject to injury by the defective condition of the Subject Ford Vehicle.

48. Plaintiff IAL has suffered and will suffer property damages and other foreseeable expenses, including for general average, salvage, storage, debris removal and surverying as a direct result of the fire caused by the defects that existed in the Subject Ford Vehicle and/or GovLog's failure to reasonably warn of said defects.

49. As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $4,750,000.

50. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST UNITED STATES OF AMERICA -STRICT PRODUCTS LIABILITY

51. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 50, inclusive, as if herein set forth at length.

52. At all material times, Defendant USA was the employer of Mary Smith. Mary Smith was acting within the course and scope of her employment in booking her Subject Ford Escape vehicle for transit on board the M/V COURAGE from Europe to the United States on the subject voyage. The Suits in Admiralty Act mandates that the USA is the exclusive defendant in any admiralty action that implicates its employees and the USA is vicariously liable for the acts and omissions of its employee, Mary Smith.

53. Defendant USA had a contractual relationship with GovLog wherein, *inter alia*, GovLog would arrange for shipment of government employee's vehicles from Belgium to the United States.

54. Upon information and belief, pursuant to the terms of the GovLog-USA contract, GovLog booked Mary Smith's vehicle with the ocean carrier and was listed as the cargo shipper rather than Mary Smith. This arrangement created an agent - undisclosed principal relationship between GovLog and the government employee.

55. Mary Smith, as the actual shipper and owner of the Subject Ford Escape Vehicle, had a statutory duty to other shippers of cargo laden on board the M/V COURAGE to ensure that the Subject Ford Escape Vehicle was in good order and condition in all respects for the transit from Belgium to the United States and to otherwise make proper warnings as to the nature of any dangerous conditions caused by the shipment of the Vehicle.

56. Upon information and belief, the Subject Ford Escape Vehicle was in a defective condition at the time it was stowed on board the M/V COURAGE on or about May 29, 2015 in Antwerp, Belgium.

57. Upon information and belief, Defendant Ford had issued 10 separate recall notices on the 2002 model Ford Escape. Two of these recall notices involved defects that had the potential to start a fire.

58. Upon information and belief, Mary Smith failed to act on any of the recall notices, and more specifically, had failed to act on the two recall notices involving defects in the 2002 model Ford Escape that had the potential to start and/or cause a fire.

59. The defects that existed in the 2002 model Ford Escape, as set forth in the Ford recall notices, rendered it to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and to foreseeable third-party by-standers, such as plaintiff herein.

60. Mary Smith, as the cargo shipper and cargo owner, is strictly liable for any and all damages her cargo caused to other cargo properly laden on board the M/V COURAGE in that the Subject Ford Escape Vehicle is and was a "dangerous cargo" as that term is used in Section 4(6) of COGSA, and she failed to provide adequate warnings as to same.

61. Defendant, USA, is responsible under the Suits in Admiralty Act for the damages resulting from the actions of its employee, Ms. Mary Smith, in breaching the terms and obligations of Section 4(6) of COGSA.

62. Plaintiff IAL suffered damages as a direct result of the fire caused by the defects that existed in the Subject 2002 Ford Escape vehicle and the failure of Ms. Smith to provide adequate warnings regarding the dangerous defects that existed.

63. As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $4,750,000.00.

64. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.00.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST
UNITED STATES OF AMERICA – NEGLIGENCE**

65. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 64, inclusive, as if herein set forth at length.

66. At all material times, Defendant USA was the employer of Mary Smith. Mary Smith was acting within the course and scope of her employment in booking her Subject Ford

Escape vehicle for transit on board the M/V COURAGE from Europe to the United States on the subject voyage. The Suits in Admiralty Act mandates that the USA is the exclusive defendant in any admiralty action that implicates its employees and the USA is vicariously liable for the acts and omissions of its employee, Mary Smith.

67. Defendant Ford had issued 10 separate recall notices on the 2002 model Ford Escape. Two of these recall notices involved defects that had the potential to start a fire.

68. Upon information and belief, Mary Smith had failed to act on any of the recall notices, and more specifically, had failed to act on the two recall notices involving defects in the 2002 model Ford Escape that had the potential to start and/or cause a fire.

69. The defects that existed in the 2002 model Ford Escape, as set forth in the Ford recall notices, rendered it to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and to foreseeable third-party by-standers.

70. Mary Smith failed to inform defendants GovLog and Vessel Interests at the time the Subject Ford Vehicle was booked for transit on board the M/V COURAGE that (i) the subject Ford Vehicle had been the subject of 10 recall notices issued by Ford, including two that had the potential to cause and/or start a fire; (ii) she had failed to take any action to cure the defects in the Subject Ford Vehicle as set forth in the various Ford recall notices; (iii) the vehicle, as manufactured by Ford and based upon the various recall notices issued by Ford was a dangerous product, fraught with unexpected dangers to foreseeable users and to foreseeable third-party by-standers, such as plaintiff herein.

71. Mary Smith's omissions, as set forth in Paragraphs 68 and 70, *supra*, are acts of negligence for which the defendant, USA, as her employer, is vicariously liable pursuant to the provisions of the Suits in Admiralty Act.

72. Plaintiff IAL suffered damages as a direct result of the fire caused by the defects that existed in the Subject 2002 Ford Escape vehicle.

73. As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $4,750,000.00.

74. As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $4,750,000.00.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### AGAINST FORD – STRICT PRODUCTS LIABILITY

75. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 74, inclusive, as if herein set forth at length.

76. At all times relevant to this action, Ford designed, assembled, advertised, sold, distributed and/or otherwise placed into the market and stream of commerce the 2002 Ford Escape model, a motor vehicle model that was intended to be used by members of the public and intended to be in locations accessible to the general public and/or in locations in the immediate vicinity of other motor vehicles, including on board ocean going car carriers.

77. By placing the 2002 Ford Escape model on the market, Ford represented that the product was safe for use by the general public and safe for those persons and property located in the general and/or immediate vicinity of said product.

78. Ford knew or should have known that owners of vehicles subject to recall notices did not always receive and/or respond to said notices.

79. Ford had a duty to exercise reasonable care in the design, manufacture, testing, inspection and marketing of the 2002 Ford Escape model.

80. Ford had a duty to provide adequate warnings to any users, carriers, operators, and/or other parties potentially subject to injury by the ordinary use or handling of the 2002 Ford

Escape model of any potentially dangerous conditions associated with the use, handling or presence in the vicinity of said 2002 Ford Escape model.

81. The Subject Ford Vehicle, as designed and /or manufactured by Ford, was not reasonably fit, suitable or safe for its intended purpose or safe for the general public, and was otherwise defective.

82. The defects rendered the 2002 Ford Escape model an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable by-standers. As a result, Ford is strictly liable in tort for the damages incurred by IAL.

83. On or about June 2, 2015, while the Subject Ford Vehicle was being utilized in an appropriate manner and in a foreseeable location, the Vehicle defect caused a fire on board the M/V COURAGE, resulting in extensive damage to property owned by innocent third parties.

84. The defect in the Subject Ford Vehicle was the legal and proximate cause of the damage to IAL's shipment.

85. Ford breached its duty to market a safe product fit for its intended purpose and fit for use in foreseeable locations populated by innocent third parties and the property of innocent third parties.

86. Ford breached its duties in connection with the design, manufacture, marketing, sale and/or distribution of the Subject Ford Vehicle by failing to provide adequate warnings about the dangerous condition(s) of the said vehicle.

87. Ford is strictly liable for any and all defects in the Subject Ford Vehicle that it manufactured, designed, sold, distributed and otherwise placed in the stream of commerce.

88. The damage sustained by IAL to its shipment was caused by the carelessness, negligence and/or otherwise legally culpable conduct of defendant Ford, without any negligence

on the part of Plaintiff, for defectively designing and/or manufacturing the Subject Ford Vehicle, and for selling an unreasonably dangerous product without adequate warnings.

89.     As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $4,750,000.

90.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.

**AS AND FOR A NINTH CAUSE OF ACTION<br>
AGAINST FORD – NEGLIGENCE**

91.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 90, inclusive, as if herein set forth at length.

92.     At all times relevant to this action, Ford assembled, advertised, sold, distributed and/or otherwise placed into the market and stream of commerce a motor vehicle model which was intended to be used by members of the public and intended to be in locations accessed by the general public, including ocean going car carriers.

93.     By placing the 2002 Ford Escape model on the market, Ford represented that the product was safe for use by the general public and safe for those persons and property located in the vicinity of said product.

94.     Ford knew or should have known that Owners of vehicles subject to recall notices did not always receive and/or respond to said notices.

95.     Ford had a duty to exercise reasonable care in the testing, inspection and marketing of the 2002 Ford Escape model.

96.     The 2002 Ford Escape model vehicle, as designed and /or manufactured by Ford, was not reasonably fit, suitable or safe for its intended purpose or safe for the general public.

97. The defects rendered the 2002 Ford Escape model an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable by-standers. As a result, Ford was negligent and is responsible for the damages incurred by IAL.

98. On or about June 2, 2015, while the Subject Ford Vehicle was being utilized and/or parked in an appropriate manner and in a foreseeable location, the Vehicle defect caused a fire, resulting in extensive damage to property owned by innocent third parties.

99. The defect in the Subject Ford Vehicle was the legal and proximate cause of the damage to IAL's property.

100. Ford negligently breached its duty to market a safe product fit for its intended purpose and fit for use in foreseeable locations populated by innocent third parties and the property of innocent third parties.

101. The damage sustained by IAL to its vehicles was caused by the carelessness and negligence of defendant Ford, without any negligence on the part of Plaintiff.

102. As a proximate result of Ford's aforementioned negligence, Plaintiff has sustained damages in the amount of no less than $4,750,000.

103. By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $4,750,000.

**W HE R E F O R E,** Plaintiff prays:

1. That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2.       That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages in the amount of at least $5,000,000, together with interest, costs and the disbursements of this action; and

3.       That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated:  New York, New York
        December 8, 2016

                                   HILL RIVKINS LLP
                                   *Attorneys for Plaintiff*
                                   International Auto Logistics, Inc.


By:      /s/ *John J. Sullivan*
        John J. Sullivan
        Thomas E. Willoughby
        45 Broadway, Suite 1500
        New York, New York 10006
        Tel.: 212-669-0600
        Fax: 212-669-0698
        E-Mail: twilloughby@hillrivkins.com
                   jsullivan@hillrivkins.com